# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| JEROME H. GROGAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case no. 4:13cv01262 PLC |
| | ) | |
| IAN WALLACE,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Petitioner Jerome H. Grogan seeks federal habeas relief from a state court judgment entered after a jury trial. See 28 U.S.C. § 2254. As part of his requested relief, Petitioner asks the Court to appoint him counsel. See Pet'r Pet'n at 16 [ECF No. 1 at 15].[2] For the reasons set forth below, the Court denies Petitioner's petition, including the request for appointed counsel.

## I. Background

The State of Missouri charged Petitioner with committing in Wayne County, Missouri, between July 1, 2005, and February 28, 2006, first-degree statutory sodomy in violation of Mo. Rev. Stat. § 566.062 (Count I) and, in August 2005, first-degree statutory rape in violation of Mo. Rev. Stat. § 566.032 (Count II).[3] The victim, a minor at the time of these offenses, is

---

[1] In the caption of his petition, Petitioner identifies as respondents: Ian Wallace, the warden at the Southeast Correctional Center, where Petitioner is incarcerated, and the Attorney General of the State of Missouri at the time Petitioner filed his petition. Petitioner does not challenge a conviction resulting in a sentence Petitioner will serve in the future. Therefore, the Court does not consider the Missouri Attorney General a Respondent in this proceeding. See Rule 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge under 28 U.S.C. § 636(c).

[3] Am. Information, filed Feb. 4, 2008, Legal File, Resp't Ex. B, at 15-16; Original Information, filed Dec. 19, 2006, Legal File, Resp't Ex. B, at 6-7.

referred to as M.S.[4]  The trial court granted Petitioner's application for change of venue and

moved the case from Wayne County to Iron County.[5]  Prior to the first trial, which ended in a

mistrial, the State dismissed the statutory sodomy charge in Count I.[6]  The jury found Petitioner

guilty of first-degree statutory rape in the second trial.[7]

    At the second trial, the State introduced the testimony of five witnesses, including M.S.,

who described Petitioner's conduct towards her.[8]  Phillip Burton, the Sheriff of Wayne County,

Missouri, testified to receiving a report of the incident from M.S. and her mother.[9]  In response

to the report, Sheriff Burton contacted a juvenile officer to set up a forensic interview of M.S.[10]

Tom Keeney, the juvenile officer for Wayne County, Missouri, stated that, upon learning of the

reported incident, he called the Missouri Child Abuse and Neglect Hotline "pursuant to state

law."[11]  Clea Fairaizel, a forensic interviewer at the Ozark Foothills Child Advocacy Center,

---

[4] Original Information, filed Dec. 19, 2006, Legal File, Resp't Ex. B, at 6-7.

The initials and date of birth of the victim identified in the amended information are different from the initials and date of birth of the victim identified in the original information.  The circumstances of the incident here involved two victims, whose initials match the initials in the original information and the amended information, and their cases were tried separately.  See, e.g., Trial Tr., Resp't Ex. A, at 12-15.  Neither party challenges the difference in the initials set forth in the original information and amended information.  The initials of Victim in this case are M.S.  See, e.g., Trial Tr., Resp't Ex. A, at 162-77.

[5] Pet'r Application for Change of Venue, Legal File, Resp't Ex. B, at 8; Order, dated Feb. 27, 2007, see Feb. 27, 2007, docket entry at Legal File, Resp't Ex. B, at 5.

[6] See Feb. 7, 2008, docket entry, Legal File, Resp't Ex. B, at 12-13.

[7] Verdict Form, Legal File, Resp't Ex. B, at 44; Trial Tr., Resp't Ex. A, at 204.

[8] Trial Tr., Resp't Ex. A, at 162-76.

[9] Id. at 133-34.

[10] Id. at 132-34.

[11] Id. at 139.

testified about her interview of M.S.[12]  Dorothy Munch, D.O., who conducted a Sexual Assault Forensic Examination ("SAFE") of M.S., testified, on direct examination, that the physical examination results were negative and M.S.'s behavior was consistent with behavior commonly exhibited by sexual assault victims.[13]  During re-direct examination, over Petitioner's objections, Dr. Munch testified about a study that reported pregnant women having "a normal hymen."[14] The trial court denied Petitioner's motion for judgment of acquittal at the close of the State's evidence and, after Petitioner waived his right to testify,[15] Petitioner's motion for judgment of acquittal at the close of all the evidence.[16]  After the jury found Petitioner guilty of statutory rape in the first degree[17] and the trial court denied Petitioner's motion for new trial,[18] the trial court sentenced Petitioner to a thirty-year term of imprisonment.[19]

In his timely direct appeal, Petitioner pursued one point, challenging as plain error the admission of certain portions of Dr. Munch's testimony.[20]  Petitioner did not challenge the sufficiency of the evidence to support the conviction and the Missouri Court of Appeals described the underlying facts as follows:

---

[12]  Id. at 141-48.

[13]  Id. at 149-54.

[14]  Id. at 160-61.

[15]  Id. at 180-82.

[16]  Id. at 179-83.

[17]  Verdict Form, Legal File, Resp't Ex. B, at 44; Trial Tr., Resp't Ex. A, at 204.

[18]  Trial Tr., Resp't Ex. A, at 207-08.

[19]  Id., at 214; J., Legal File, Resp't Ex. B, at 48-49.  During trial, Petitioner waived sentencing by the jury. Trial Tr., Resp't Ex. A, at 122-24.

[20]  Pet'r Br., Resp't Ex. C, at 9.

Victim was born in September 1994. She was the daughter of R.S. (Mother). In 1997, Mother and [Petitioner] married.

In August 2005, Victim was 10 years old. Mother and [Petitioner] had separated by that time. Victim was in the living room of her home with her cousin, B.L. [Petitioner] was watching them while Mother was at work. [Petitioner] went outside to his tractor-trailer unit to get some cigarettes. He returned with a pornographic movie that he placed into the living room videocassette player. He played the videotape in the presence of Victim and B.L. Then, [Petitioner] took B.L. into the bedroom and shut the door. When they came out of the bedroom sometime later, [Petitioner] angrily told Victim to "come on." She did not want to go, so [Petitioner] grabbed her arm and started pulling her down the hallway to the bedroom.

Once they were in the bedroom, [Petitioner] locked the door, turned out the light and undressed. Victim could still see because the sun was shining through the bedroom window. Victim observed [Petitioner]'s penis. She described it as long with black hair on it and a pink circle on the end. [Petitioner] touched Victim on the chest. Next, he told Victim to get undressed and "feel comfortable." Once Victim was naked, she was told to lie down on the bed. [Petitioner] got on top of her and inserted his penis into her vagina. Victim could feel [Petitioner]'s penis inside her vagina, but did not know how far it penetrated. [Petitioner] told Victim to get up and not tell anyone what had happened. [Petitioner] said that if she told, he would not be able to see her anymore. She got dressed and went back into the living room.

Victim said nothing about the incident for eight months. In April 2006, Victim told her Mother what had happened. She called the Piedmont police department. The case was turned over to the Wayne County Sheriff Phillip Burton (Sheriff Burton) because the incident had occurred in the county. When Sheriff Burton met with Mother, she reported that Victim had been sexually assaulted by [Petitioner]. Sheriff Burton also spoke to Victim, who said [Petitioner] had touched her in ways that she did not want to be touched and that it also happened to her cousin, B.L. Sheriff Burton contacted the Wayne County deputy juvenile officer (DJO) so a forensic interview could be conducted. The DJO placed a hotline call to the Children's Division (Division). A Division investigator scheduled a forensic interview at the Child Advocacy Center (CAC).

CAC employee Clea Fairaizel (Fairaizel) was a trained forensic interviewer. She had conducted approximately 500 such interviews. Victim referred to [Petitioner]'s penis as "his bottom." Victim referred to her vagina as her "bottom." Victim said [Petitioner] "put his bottom in my bottom." Fairaizel understood that statement to mean that [Petitioner] had put his penis in Victim's vagina. During the forensic interview, Victim crossed her arms right away. Although the room was very warm, she kept on her coat throughout the interview. She only occasionally made eye contact with Fairaizel. While she was asking

questions, Victim grabbed her skirt, curled it up and then shifted her legs back and forth. In Fairaizel's opinion, Victim's behavior was very typical of that commonly exhibited by a victim of sexual assault.

Dr. Dorothy Munch (Dr. Munch) was a family practice physician in Poplar Bluff, Missouri. On April 26, 2006, she performed a [Sexual Assault Forensic Examination or] SAFE examination on Victim. The exam was basically negative. Victim had normal genitalia with some nonspecific, mild redness. According to Dr. Munch, physical findings of sexual abuse would typically be found only in about 5-10% of SAFE exams. Based upon Dr. Munch's observation of Victim, her behavior conformed with that commonly exhibited by victims of sexual assault.

State v. Grogan, No. SD29241, Mem. Supplementing Order Affirming J. Pursuant to Rule 30.16(b), Resp't Ex. E, at 2-4 (Mo. Ct. App. filed June 23, 2009) (per curiam). The Missouri Court of Appeals affirmed Petitioner's conviction, and issued its mandate.[21]

Following his direct appeal, Petitioner timely filed[22] a *pro se* motion for post-conviction relief ("PCR motion") presenting a trial court error claim and an ineffective assistance of counsel claim based on the admission, without objection, of Dr. Munch's testimony regarding Victim's credibility.[23] Through appointed counsel, Petitioner filed an amended PCR motion.[24] In the amended PCR motion, Petitioner argued the trial court erred in admitting Dr. Munch's testimony about a study of pregnant women; the trial attorney "unreasonably elicited Clea Fairaizel's testimony concerning otherwise inadmissible hearsay statements made by" Victim; and the trial attorney "unreasonably elicited Dr. Dorothy Munch's belief that . . . [V]ictim's story was

---

[21] State v. Grogan, No. SD29241, Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.16(b) (Mo. Ct. App. filed June 23, 2009) (per curiam), Resp't Ex. E, at 2-12; Mandate, Resp't Ex. E, at 1.

[22] For an explanation of the timeliness of Petitioner's *pro se* PCR motion, see Hr'g Tr., Resp't Ex. F, at 4-6.

[23] Pet'r *pro se* PCR Mot., Legal File, Resp't Ex. G, at 5-16.

[24] Pet'r Am. PCR Mot., filed Apr. 25, 2011, Resp't Ex. G, at 15-24.

credible."[25]  At an evidentiary hearing on Petitioner's amended PCR motion,[26] the motion court took judicial notice of the record in Petitioner's criminal case, and Petitioner presented the deposition testimony of Dr. Munch, a copy of the study to which Dr. Munch referred at trial, a copy of the decision of the Missouri Court of Appeals in Petitioner's direct appeal, and the testimony of Petitioner's trial attorney, including a copy of "the SAFE exam narrative."[27]

After the hearing, the motion court denied Petitioner's claims.[28]  The motion court concluded the evidence "failed to substantiate ineffective assistance of counsel" and, even if it had, Petitioner had not established the requisite prejudice.[29]  In particular, the motion court reasoned that "[t]he testimony of the child victim alone was sufficient to support the jury's verdict of guilt" and the testimony at the hearing did "not rise to the level of such prejudice that the jury would have reached a different result."[30]

Petitioner timely appealed the motion court's judgment to the Missouri Court of Appeals. In his post-conviction appeal, Petitioner presented one point, arguing that his trial attorney was ineffective in eliciting Ms. Fairaizel's testimony that Victim told her "he put his bottom in my bottom" because such inadmissible hearsay bolstered Victim's credibility.[31]  The Court of

---

[25]  Pet'r Am. PCR Mot., filed Apr. 25, 2011, Resp't Ex. G, at 16, 21-23.

[26]  Hr'g Tr., Resp't Ex. F.  The judge presiding over Petitioner's post-conviction proceeding was not the judge who presided over Petitioner's trial proceeding.

[27]  Id. at 6-35.

[28]  Mot. Ct. J. and Findings of Fact and Conclusions of Law, filed Aug. 11, 2011, Legal File, Resp't Ex. G.

[29]  Id. at 27.

[30]  Id.

[31]  Pl.'s Br., Resp't Ex. H, at 10.

Appeals affirmed the motion court's judgment in a summary order accompanied by a more detailed supplemental memorandum.[32]

In affirming the motion court's judgment, the Missouri Court of Appeals for the Southern District found the facts as follows:

> [Petitioner] was Victim's step-father in August 2005, when Victim was ten years old. [Petitioner], Victim and Victim's female cousin were at [Petitioner]'s home one evening when [Petitioner] left the house to retrieve some cigarettes from his truck. He also retrieved a pornographic movie, which he played for both Victim and her cousin upon returning to the home. [Petitioner] then asked Victim's cousin to go into the bedroom with him and shut the door behind them.

> When [Petitioner] and Victim's cousin exited the bedroom, [Petitioner] attempted to take Victim into the bedroom. Victim resisted, and [Petitioner] pulled her down the hallway, angrily telling Victim to "come on." [Petitioner] took Victim into the bedroom, closed and locked the door, and turned out the light. He touched Victim's chest and told her to get undressed. [Petitioner] told Victim to "feel comfortable[,]" but she did not. [Petitioner] "got on top of" Victim and inserted his penis into her vagina.

> Afterward, [Petitioner] told Victim to get up and not to tell anyone because she would not get to see him anymore. Victim believed him and did not tell anyone until the following April because she still wanted [Petitioner] in her life, as she thought of him as her father. At that point in time, Victim disclosed [Petitioner]'s actions to her mother, who called the Wayne County sheriff.

> Sheriff Phillip Burton briefly met with Victim and her mother; Victim repeated the allegations against [Petitioner] to Burton. Burton then contacted Tom Keeney, the juvenile officer for Wayne County; pursuant to state law, Keeney then called the Missouri Child Abuse and Neglect Hotline.

> Clea Fairaizel with the Ozark Foothills Child Advocacy Center conducted Victim's forensic interview. During the interview, Victim was uncomfortable, leaving her coat on, fidgeting with her clothing, and avoiding eye contact with Fairaizel, behavior typical of that displayed by sexual-abuse victims. Victim referred to both [Petitioner]'s penis and her own vagina as a "bottom[,]" while she referred to her breasts as "breasts." Fairaizel took Victim's statement that

---

[32] <u>Grogan v. State</u>, No. SD31612, Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b) (Mo. Ct. App. filed Oct. 24, 2012 (per curiam), Resp't Ex. J.

[Petitioner] "put his bottom in my bottom" to mean that he put his penis in her vagina.

Dr. Dorothy Munch conducted Victim's SAFE examination on April 26, 2006, at the Poplar Bluff Wellness Clinic. The examination disclosed no physical signs of sexual abuse, which is not unusual in cases of sexual abuse and is consistent with findings in other sexual-abuse cases.

Grogan v. State, No. SD31612, Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b) (Mo. Ct. App. filed Oct. 24, 2012 (per curiam), Resp't Ex. J, at 2-4 (footnote omitted) (ninth and sixteenth alterations in original).

After discussing the two-pronged test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), to establish an ineffective assistance of counsel claim, the Missouri Court of Appeals found Petitioner's trial attorney's testimony at the evidentiary hearing "that she did not recall why she elicited the challenged testimony," did not constitute "an admission that counsel had *no* trial strategy, but rather constitute[d] an admission that counsel simply can no longer recall what that strategy was some three years later."[33] Reviewing the trial record, the Court of Appeals concluded that "trial counsel's strategy was to highlight the expected inconsistencies between the testimony of Victim, Fairaizel, and Dr. Munch, in order to persuade the jury that Victim's allegation of abuse was fabricated in response to the separation of her mother and [Petitioner]."[34]

In particular, the Court of Appeals noted Petitioner's trial counsel described, during her opening statement, how "she would demonstrate that no acts of sexual abuse had ever happened: through inconsistencies between the testimony of Victim, Fairaizel, and Dr. Munch."[35] Petitioner's trial counsel mentioned Victim's challenged statement, which "was taken to mean

---

[33] Id. at 7 (emphasis in original).

[34] Id.

[35] Id. at 6.

that [Petitioner] had put his penis inside [Victim's] vagina," and reported Dr. Munch "would testify that[,] if that had actually happened, there would have been physical evidence present in Victim's SAFE examination."[36]  The Court of Appeals further pointed to trial counsel's emphasis in her opening statement on the fact that "Victim's allegations against [Petitioner] were only made after [Petitioner] and Victim's mother had separated."[37]

During trial, the Missouri Court of Appeals found, Petitioner's counsel elicited the challenged testimony while cross-examining Ms. Fairaizel and, during cross-examination of Dr. Munch, Petitioner's counsel attempted unsuccessfully to elicit a concession "that there should have been physical evidence of a sexual assault if the abuse occurred as claimed by Victim."[38] Concluding the elicitation of the challenged testimony "was a reasonable means of pursuing" counsel's trial strategy, the Missouri Court of Appeals decided the fact "[t]hat the expected inconsistencies did not materialize during trial does not now negate the validity or reasonableness of that strategy."[39]

Petitioner subsequently filed his habeas petition presenting four grounds for relief based on his trial attorney's allegedly ineffective assistance of counsel.

## II. Petitioner's Grounds for Federal Habeas Relief

In his federal habeas petition, Petitioner asserts the following four grounds for relief:

1.  The trial attorney provided ineffective assistance by failing to establish through Dr. Munch's testimony that her cited study of pregnant women had no relevance to Victim;

---

[36] Id.

[37] Id.

[38] Id. at 7.

[39] Id. at 8.

2.  The trial attorney provided ineffective assistance by unreasonably eliciting Ms. Fairaizel's testimony concerning inadmissible hearsay statements made by Victim;

3.  The trial attorney provided ineffective assistance by unreasonably eliciting Dr. Munch's belief that Victim's story was credible; and

4.  The trial attorney provided ineffective assistance by improperly bolstering Victim's credibility by eliciting inadmissible hearsay from Ms. Fairaizel that Victim told Ms. Fairaizel Petitioner "put his bottom in my bottom."

The first and third grounds for relief, Respondent contends, are procedurally barred from consideration on their merits because Petitioner did not present them on appeal from the denial of his post-conviction motion.

With respect to grounds two and four, Respondent notes they "share identical legal and factual components" and, therefore, Respondent "collapses them into a single claim."[40]  The Court also considers as one ground for relief Petitioner's second and fourth ineffective assistance of counsel claims focused on Ms. Fairaizel's challenged testimony about what Victim said to her. The Court refers to the combined ground for relief as "ground two" for purposes of this decision. Respondent argues the ineffective assistance of counsel claim in ground two lacks merit because the Missouri Court of Appeals' decision considering this issue is neither an incorrect nor an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### III. Discussion of Grounds for Habeas Relief

A.  <u>Procedural Bar – Challenges to counsel's examination of Dr. Munch (grounds one and three)</u>

---

[40]  Resp't Response at 6 n.2 [ECF No. 6].

Petitioner asserts his trial attorney provided ineffective assistance by failing to establish through Dr. Munch's testimony that the study regarding pregnant women cited by Dr. Munch had no relevance to Victim (ground one) and by eliciting Dr. Munch's belief Victim's story was credible (ground three). Respondent counters that these grounds are procedurally barred and, therefore, may not be considered on their merits.

Before seeking federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a habeas petitioner "must exhaust available state remedies by fairly presenting [any federal] claim in each appropriate state court." Nash v. Russell, 807 F.3d 892, 898 (8th Cir. 2015) (internal quotation marks omitted) (quoting Baldwin v. Reese, 541 U.S. 27, 29 (2004)), cert. denied, 136 S. Ct. 1825 (2016). Importantly, to satisfy the exhaustion requirement, a petitioner must give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011) (internal quotation marks omitted) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). Claims that have not been exhausted and fairly presented to the state courts are procedurally defaulted. Wemark v. Iowa, 322 F.3d 1018, 1022 (8th Cir. 2003) (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

To exhaust a federal constitutional claim, a petitioner must present the claim to the state courts "in accordance with state procedural rules." Arnold v. Dormire, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (internal quotation marks omitted) (quoting Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009)). In Missouri state court proceedings, a litigant must raise constitutional claims at the earliest opportunity and preserve them throughout the proceedings. State v. Liberty, 370 S.W.3d 537, 546 (Mo. 2012) (en banc) (quoting State v. Wickizer, 583 S.W.2d 519, 523 (Mo. 1979) (en banc)). The first opportunity to raise an ineffective assistance of counsel

claim in Missouri is in a post-conviction motion proceeding; and successive post-conviction motions are not permitted. Mo. S. Ct. Rule 29.15; Moore-El v. Luebbers, 446 F.3d 890, 896 (8th Cir. 2006). A decision on a post-conviction motion in Missouri is subject to review on appeal. Mo. S. Ct. Rule 29.15(k). Any claim that should have been but was not presented in a post-conviction motion or on appeal from a denial of a post-conviction motion is procedurally defaulted. See Interiano v. Dormire, 471 F.3d 854, 856 (8th Cir. 2006) (finding claims not presented in an amended Rule 29.15 post-conviction motion or appeal from the denial of that motion were procedurally defaulted).

A federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court, unless a petitioner demonstrates either cause and prejudice or a miscarriage of justice. Sawyer v. Whitley, 505 U.S. 333, 338-39 (1992); accord Skillicorn v. Luebbers, 475 F.3d 965, 976-77 (8th Cir. 2007) ("Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claim"). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'" Maples v. Thomas, 565 U.S. 266, 281 (2012) (alterations and emphasis in original) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)). Notably, the precise contours of the cause requirement have not been clearly defined. Ivy v. Caspari, 173 F.3d 1136, 1140 (8th Cir. 1999). If a petitioner does not establish cause for the procedural default, the Court need not determine whether he demonstrated actual prejudice.

See Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007) ("If a prisoner fails to demonstrate cause the court need not address prejudice").

To invoke the fundamental miscarriage of justice exception to the procedural default rule, a petitioner must present new evidence affirmatively demonstrating that he is innocent of the crime for which he was convicted. Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" Cagle, 474 F.3d at 1099 (quoting Schlup v. Delo, 513 U.S. 298, 316 (1995)).

Petitioner did not pursue in his post-conviction appeal his ineffective assistance of counsel challenges based on his trial attorney's examination of Dr. Munch. Therefore, Petitioner's ineffective assistance of counsel claims in grounds one and three of his federal habeas petition are procedurally defaulted. Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (finding one of the petitioner's claims defaulted because he "failed to raise it in his post-conviction appeal").

Petitioner has not asserted or demonstrated any cause for his failure properly to present to the state courts the ineffective assistance of counsel claims he now pursues in grounds one and three of his federal habeas petition. Because Petitioner has not established the requisite cause, the Court need not consider whether Petitioner has demonstrated the prejudice needed to overcome the procedural default of those claims.

Finally, Petitioner has not submitted any new evidence of his actual innocence, nor has he alleged such evidence exists. Therefore, no fundamental miscarriage of justice exists to avoid the procedural default.

Under the circumstances, grounds one and three are procedurally barred, and the Court may not consider the merits of those claims. Because Petitioner pursued the remaining ineffective assistance of counsel claim, the claim referred to as ground two, in his post-conviction appeal, the Court will address the merits of that ground for relief.

B. Merits – Ineffective assistance of trial counsel – Eliciting Victim's inadmissible hearsay statements through cross-examination of Ms. Fairaizel (ground two)

In his second ground for relief, Petitioner contends his trial attorney provided ineffective assistance of counsel by eliciting inadmissible hearsay during the cross-examination of Ms. Fairaizel, specifically a statement Victim made to Ms. Fairaizel that Petitioner "put his bottom in her bottom." Petitioner asserts Victim's statement to Ms. Fairaizel constitutes inadmissible hearsay that bolstered Victim's credibility.

Respondent counters that the Missouri Court of Appeals correctly and reasonably applied clearly established federal law in concluding in Petitioner's post-conviction appeal that Petitioner's trial attorney did not provide ineffective assistance of counsel. In particular, Respondent argues the Court of Appeals' decision that counsel's challenged questioning was part of a reasonable trial strategy is supported by the record and is not an incorrect or unreasonable application of Strickland.

For this ground, Petitioner challenges the following exchange between his trial attorney and Ms. Fairaizel at trial:

Q. During her forensic interview [Victim] told you "he put his bottom in my bottom." Did you take that to mean she was describing vaginal intercourse?

A. That would indicate that, yes, because she was talking about his penis in her vagina.

Q. No further questions at this time, Your Honor.

14

Trial Tr., Resp't Ex. A, at 148. In affirming the denial of Petitioner's post-conviction motion, the Missouri Court of Appeals concluded the challenged question was part of a reasonable trial strategy. Specifically, the Court of Appeals held:

> In this case, trial counsel's trial strategy was to highlight the expected inconsistencies between the testimony of Victim, Fairaizel, and Dr. Munch, in order to persuade the jury that Victim's allegation of abuse was fabricated in response to the separation of her mother and [Petitioner]; emphasizing that Victim insisted that [Petitioner] "put his bottom in [her] bottom" – and that, with those words, Victim in fact meant that [Petitioner] put his penis into her vagina – was a reasonable means of pursuing that end. That the expected inconsistencies did not materialize during trial does not now negate the validity or reasonableness of that strategy.

Grogan, No. SD31612, Resp't Ex. J, at 7-8.

1. Standard of Review (Merits)

The Court "is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). A federal court may not grant relief to a state prisoner unless a state court's adjudication of a claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States)"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established United States Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000) ("Taylor"). If a state court's decision is not "contrary to" clearly established law, then the "unreasonableness" standard applies, which is "meant to be difficult to meet, and 'even a strong

case for relief does not mean the state court's contrary conclusion was unreasonable.'" <u>Williams v. Roper</u>, 695 F.3d 825, 831 (8th Cir. 2012) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011)).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." <u>Taylor</u>, 529 U.S. at 407-08; <u>see</u> <u>also</u> <u>id.</u> at 413.

The "clearly established Federal law" requirement of habeas review requires the habeas court to consider only United States Supreme Court precedents decided as of the time the state court issues its decision on the merits. <u>Greene v. Fisher</u>, 565 U.S. 34, 38-40 (2011) (relying on <u>Cullen v. Pinholster</u>, 563 U.S. 170 (2011)).  State courts are not required to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" <u>Revels v. Sanders</u>, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).  Importantly, in reviewing state court decisions to ascertain whether they either contradict or unreasonably apply clearly established federal law, a federal habeas court "is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 563 U.S. at 181.

Additionally, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The presumption of correctness of a state court's findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels, <u>Smulls v. Roper</u>, 535 F.3d 853, 864-65 (8th Cir. 2008) (en banc); and to a state court's implicit findings of fact, <u>Grass v. Reitz</u>, 749 F.3d 738, 743 (8th Cir. 2014).  Likewise, federal habeas courts defer to state court credibility determinations. <u>Smulls</u>, 535 F.3d at 864.

Here, the merits of the ground under consideration require analysis of the effectiveness of Petitioner's trial attorney in representing Petitioner during counsel's cross-examination of Ms. Fairaizel, specifically with regard to the challenged statement by Victim to Ms. Fairaizel. The Sixth Amendment's guarantee of counsel is one of the rights applicable to the States through the Fourteenth Amendment because it is deemed fundamental and essential to a fair trial. See Gideon v. Wainwright, 372 U.S. 336, 342 (1963). "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970); accord Kimmelman v. Morrison, 477 U.S. 365, 377 (1986). When reviewing "an ineffective-assistance-of-counsel claim, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Woods v. Donald, 135 S. Ct. 1372, 1375 (2015) (per curiam) (quoting Strickland, 466 U.S. at 689). To succeed on an ineffective-assistance-of-counsel claim, a federal habeas petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness" [("performance prong")]; and (2) "the deficient performance prejudiced the defense [("prejudice prong)]." Strickland, 466 U.S. at 688, 687.

The first or performance prong "requires a showing 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" White v. Dingle, 757 F.3d 750, 752-53 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 687). More specifically, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." Armstrong v. Kemna, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-94). In assessing a challenge to an attorney's performance, a federal habeas court must not second-guess counsel's assistance, avoid the "distorting effects of

hindsight," and attempt to evaluate counsel's challenged conduct from counsel's perspective at the time the challenged conduct occurred. Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689). "Although hindsight may make a decision appear unwise or unsound, when scrutinizing counsel's performance a court 'must be highly deferential.'" Underdahl v. Carlson, 381 F.3d 740, 743 (8th Cir. 2004) (quoting Strickland, 466 U.S. at 689).

There is "a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." Garrett v. Dormire, 237 F.3d 946, 949-50 (8th Cir. 2001) (citing Strickland, 466 U.S. at 689). Strategic decisions left to counsel include all trial decisions other than the decision whether or not to plead guilty, waive a jury trial, testify on one's own behalf, and take an appeal. United States v. Washington, 198 F.3d 721, 723-24 (8th Cir. 1999). "There is a strong presumption that counsel's strategic choices were reasonable." Forsyth v. Ault, 537 F.3d 887, 891 (8th Cir. 2008).

The second or prejudice prong "requires a showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" White, 757 F.3d at 753 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Carroll v. Schriro, 243 F.3d 1097, 1100 (8th Cir. 2001) (internal quotation marks omitted) (quoting Strickland, 466 U.S. at 694). The petitioner bears the burden of showing such a reasonable probability, Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992); and, in determining whether or not there was prejudice, the federal habeas court considers the totality of the evidence, Armstrong v. Kemna, 590 F.3d 592, 596 (8th Cir. 2010).

The habeas court need not address the prejudice prong if the attorney's performance was not deficient. See Parkus v. Bowersox, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the

habeas court does not need to address counsel's allegedly deficient performance if the petitioner has failed to show prejudice.  See Strickland, 466 U.S. at 697; Williams v. Locke, 403 F.3d 1022, 1025 (8th Cir. 2005).

Importantly, "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is . . . difficult."  Harrington, 562 U.S. at 105.  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Id. (internal citations omitted).  More specifically, when resolving an ineffective assistance of trial counsel claim, a federal habeas court views the claim through two filters:  first the court defers to the judgments of trial counsel under Strickland, 466 U.S. at 689, and then the court "defer[s] to the state courts' application of federal law to the facts of the case, see Bell . . . , 535 U.S. [at] 698-99 . . . ."  Marcrum v. Luebbers, 509 F.3d 489, 501 (8th Cir. 2007).

### 2. Reasonable trial strategy

Here, the Court of Appeals found Petitioner's trial attorney's challenged questioning of Ms. Fairaizel "constituted reasonable trial strategy."  The trial transcript reveals trial counsel's strategy to identify the inconsistencies between Victim's, Ms. Fairaizel's, and Dr. Munch's testimony, to emphasize the lack of physical evidence supporting Victim's allegations, and to characterize Victim's report of the incident as a purported fabrication..  In her opening, Petitioner's attorney stated:

> [w]e are going to show you that this never happened. . . .  [Victim], from the beginning, has said "he put his bottom in my bottom."  To [Victim], . . . this means he put his penis in her vagina.  That is how she understood it.  That is how Clea Fairaizel understood it.  But Dr. Munch will tell you there is no physical evidence that that occurred.  The hymen is intact, with no transection, which means there wasn't even a tear that healed over the course of eight months.  There is nothing to say that this happened with physical evidence. . . . Dr. Munch will also tell you that had this occurred like [Victim] says it did, there would have

been physical evidence, even eight months later, and there was none. . . . Then you will hear from [Victim]. She says it only occurred once at her mother's house and he put his bottom in my bottom. . . . [W]e'll also tell you that [Petitioner] and [Victim's mother] were separated. They were living apart. They were on the road towards divorce but got back together off and on. By January of '06 they were no longer doing that. . . . [A]nd then, these allegations are made when [Petitioner] moved on with his life and got another girlfriend. Then [Victim] came forward eight months later and said "he put his bottom in my bottom." . . . There's no physical evidence that this ever occurred. All you have is a little girl's story, who has lost the only father she's ever known . . . . This never happened . . . . This little girl is telling a story, but a story is all it is.

Trial Tr., Resp't Ex. A, at 128-31. During her cross-examination of Ms. Fairaizel, Petitioner's counsel engaged in the challenged inquiry. During cross-examination, Dr. Munch, acknowledged that her findings were consistent with other victims of sexual abuse and with "an eleven year old who had never engaged in sexual activity," and that the credibility of a victim's story is what determines whether or not a victim suffered from sexual abuse. (Trial Tr., Resp't Ex. A, at 155-56.) Petitioner's counsel also cross-examined Dr. Munch about the absence of physical evidence of sexual abuse. However, as the Missouri Court of Appeals noted, counsel did not obtain Dr. Munch's concession "that there should have been physical evidence of a sexual assault if the abuse occurred as claimed by Victim."[41] In her closing, Petitioner's counsel argued the importance of having physical evidence to support accusations, the absence of evidence supporting Victim's statements regarding the incident, and the position that the incident did not occur.[42]

The record supports the Missouri Court of Appeals' decision. Petitioner has not shown how the Court of Appeals' decision is based on an unreasonable determination of the facts in light of the evidence presented.

---

[41] Trial Tr., Resp't Ex. A, at 156-58; Grogan, No. SD31612, Resp't Ex. J, at 7.

[42] Trial Tr., Resp't Ex. A, at 190-94.

Additionally, the "question under § 2254(d) is not whether [the federal habeas court] believe[s] the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." <u>Kennedy v. Kemna</u>, 666 F.3d 472, 477 (8th Cir. 2012) (internal quotation marks omitted) (quoting <u>Knowles v. Mirzayance</u>, 555 U.S. 111, 123 (2009)). Petitioner provides no basis for a finding that the Missouri Court of Appeals' application of the <u>Strickland</u> standard was contrary to or an unreasonable application of clearly established federal law. In light of the deference accorded counsel's performance and the strong presumption that counsel's challenged actions constitute reasonable trial strategy, the Missouri Court of Appeals correctly and reasonably concluded counsel's challenged conduct did not constitute deficient performance under <u>Strickland</u>. In the absence of an attorney's deficient performance, the Court need not address prejudice under <u>Strickland</u>. <u>Parkus</u>, 157 F.3d at 1140. Petitioner's ineffective assistance of trial counsel claim in ground two is without merit.

## IV. Discussion of Petitioner's Request for an Appointed Attorney

In his petition, Petitioner requests the appointment of an attorney. Respondent did not address this request.

Habeas proceedings are civil in nature. <u>See</u> <u>Hilton v. Braunskill</u>, 481 U.S. 770, 776 (1987). Therefore, a habeas petitioner does not have a Sixth Amendment right to counsel. <u>Hoggard v. Purkett</u>, 29 F.3d 469, 471 (8th Cir. 1994). Nor is there any other constitutional right to the appointment of counsel in a § 2254 proceeding. <u>See id.</u> Instead, in a habeas proceeding pursued by a prisoner challenging state custody not involving a capital sentence, such as this case, 18 U.S.C. § 3006A governs the appointment of counsel for a petitioner who is "financially unable to afford counsel." 28 U.S.C. § 2254(h). Under § 3006A, a court may appoint an

attorney to represent a "financially eligible" § 2254 petitioner if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B).

The interests of justice support the appointment of an attorney for a habeas petitioner under limited circumstances, either when the habeas court conducts an evidentiary hearing on the habeas petition, Hoggard, 29 F.3d at 471, or, in the absence of an evidentiary hearing, when the habeas court exercises its discretion to appoint an attorney, Abdullah v. Norris, 18 F.3d 571, 573 (8th Cir. 1994). The record does not support a determination that the interests of justice require the appointment of counsel.

An evidentiary hearing is not required in this case because the Court may consider only the record before the state court that adjudicated the merits of Petitioner's second ground for relief. See Cullen, 563 U.S. at 181. Additionally, the state court record is used to ascertain whether grounds for relief, such as Petitioner's first and third grounds, are procedurally barred.

In exercising its discretion to resolve a habeas petitioner's request for appointed counsel in the absence of an evidentiary hearing, a habeas court considers the legal and factual complexity of the case and the petitioner's ability to investigate and present the grounds for relief. Abdullah, 18 F.3d at 573; accord Morris v. Dormire, 217 F.3d 556, 558-59 (8th Cir. 2000). Petitioner's grounds are straightforward ineffective-assistance-of-trial-counsel claims resolved on the basis of the state court proceedings only. Nothing of record demonstrates Petitioner lacked access to legal resources to support his positions on his grounds for relief. Therefore, neither the legal and factual complexity of Petitioner's grounds for relief nor Petitioner's ability to investigate and present those grounds supports the appointment of counsel.

## V. Conclusion

Petitioner's petition for relief pursuant to 28 U.S.C. § 2254 is denied because: grounds one and three are procedurally barred and ground two lacks merit. Additionally, the Court denies Petitioner's request for an appointed attorney. Finally, because Petitioner failed to make a substantial showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

After careful consideration,

**IT IS HEREBY ORDERED** that Petitioner's request for an appointed attorney is **DENIED**.

**IT IS FURTHER ORDERED** that the federal habeas petition filed by Jerome Grogan [ECF No. 1] is **DENIED** without further proceedings.

**IT IS FINALLY ORDERED** that any motion by Petitioner for a certificate of appealability will be **DENIED**.

A judgment denying Petitioner's petition is filed herewith.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of March, 2017.